***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before the Deputy Commissioner and the briefs and arguments of the parties. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, or rehear the parties or their representatives. Accordingly, the Full Commission affirms with modifications, the Opinion and Award of Deputy Commissioner Donovan.
 *********** EVIDENTIARY MATTERS
On March 7, 2011, Chair Pamela T. Young held in abeyance Defendants' February 7, 2011 motion to stay the December 23, 2010 Opinion and Award by Deputy Commissioner Donovan and motion for the Full Commission to consider additional evidence regarding Plaintiff's short-term disability compensation. Defendants' motion to stay the December 23, 2010 *Page 2 
Opinion and Award by Deputy Commissioner Donovan is denied. Defendants' motion to consider additional evidence regarding Plaintiff's short term disability compensation is granted.
Upon motion by Defendants, the Full Commission hereby admits into evidence the following:
1. Letter dated June 2, 2011 to Plaintiff's counsel from Jamie Hilton, Defendant-Employer's workers' compensation administrator, regarding short-term disability payments to Plaintiff.
2. Letter dated June 1, 2011 to Jamie Hilton, Defendant-Employer's workers' compensation administrator, from Peg Shafer regarding Plaintiff's supplemental disability coverage.
3. Letter dated February 4, 2011 to Jamie Hilton from Matthew Brown, in Defendant-Employer's Human Resource Office, regarding the payment history of short-term disability benefits paid to Plaintiff.
 ***********
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties as:
 STIPULATIONS
1. All parties are properly before the Industrial Commission and the Industrial Commission has jurisdiction of the parties and the subject matter.
2. All parties have been correctly designated and there is no question as to misjoinder or non-joinder of parties.
3. This case and the parties are subject to the North Carolina Workers' Compensation Act. *Page 3 
4. An employment relationship existed between Plaintiff and Defendant-Employer on or about January 19, 2010, the date of the alleged injury.
5. Plaintiff worked as a housekeeper for Defendant-Employer at the time of his alleged injury.
6. Defendant-Employer is self-insured and Corvel Corporation is the third-party administrator.
7. Plaintiff's average weekly wage as of the date of his injury was $521.89, yielding a compensation rate of $347.94 per week.
 *********** ISSUES
1. Whether Plaintiff suffered a compensable injury by accident to his right shoulder arising out of and in the scope of his employment with Defendant-Employer on January 19, 2010.
2. If so, is Plaintiff disabled as a result of the alleged accident?
3. To what benefits, if any, is Plaintiff entitled?
4. If Plaintiff's claim is compensable, is Defendant entitled to a credit pursuant to N.C. Gen. Stat. § 97-42 for short-term disability benefits received by Plaintiff?
 *********** EXHIBITS
The parties stipulated into evidence Stipulated Exhibit 1 including Plaintiff's medical records, discovery, job description, and Industrial Commission forms.
 *********** *Page 4 
Based upon all of the competent evidence of record and the reasonable inferences therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Full Commission, Plaintiff was 54 years of age and had completed the eleventh grade. He began his employment with Defendant-Employer in January 1997, in housekeeping. His duties included emptying trash and recyclables from offices, building lobbies, bathrooms, and halls. Plaintiff's duties also included cleaning floors, steps, entrances to buildings, and other surfaces, as well as sweeping and mopping bathroom and suite floors and cleaning and maintaining the janitor's closets.
2. On January 19, 2010, Plaintiff had finished cleaning the floors in a residence hall, had emptied his mop bucket, and was preparing to leave work when he was called to clean a spill on an elevator within the residence hall. The elevator was at the time on the third floor. Plaintiff then re-filled his five-gallon mop bucket for this specific job and proceeded to mop the spill. Plaintiff did not fill the mop bucket completely full. After performing these cleaning duties, Plaintiff went to the janitor's closet located on the third floor, where he was working, to empty his mop bucket again. When Plaintiff lifted the five gallon mop bucket to empty the remaining water into a sink, he felt pain in his right shoulder. While emptying the bucket in the third-floor janitor's closet, Plaintiff was in an awkward position.
3. The third-floor janitor's closet was not Plaintiff's regular custodial closet. Plaintiff testified that he may have used it once or twice.
4. This particular janitor's closet was different in many respects from the normal janitorial closet. Plaintiff's supervisor, Mr. Joe McFalls, testified that this janitor's closet was used primarily for storage and contained vacuums and unused desks and other furniture. He *Page 5 
further noted that the closet was extremely small, cluttered and cramped, and had only a tight area in which to get to the sink where Plaintiff was emptying his mop bucket. Mr. McFalls testified that the closet was "just a little bigger than this witness stand." Plaintiff's normal place to empty his bucket was located in a large storage room with a sink that is two and a half to three feet high. The Full Commission finds also that because Plaintiff had re-filled the mop bucket but only performed one small job, there would be a greater amount of water in the bucket than usual.
5. As Plaintiff's injury occurred at the end of his shift, Plaintiff went home at the end of his shift, soon after the injury to his shoulder. Plaintiff testified that he assumed it was a pulled muscle and continued working until February 10, 2010, when the injury to his shoulder "got so bad" that he could not bear it anymore. Although Plaintiff continued doing his regular job he continued to be in pain.
6. Plaintiff reported the January 19, 2010 injury to Defendant-Employer on February 11, 2010. Defendant-Employer completed an Industrial Commission Form 19, Employer's Report ofEmployee's Injury or Occupational Disease to the IndustrialCommission, dated February 11, 2010 on which Defendant-Employer noted that Plaintiff strained his right shoulder when he lifted a mop bucket full of water.
7. The Full Commission finds based upon the greater weight of the evidence that the January 19, 2010 incident while Plaintiff was emptying the mop bucket in a seldom used sink in a cramped, cluttered, and abnormal closet with only a tight area in which to reach the sink constituted an interruption of Plaintiff's normal work routine with the introduction thereby of unusual conditions likely to result in unexpected consequences.
8. On February 10, 2010, Plaintiff presented to Dr. Timothy Johnston with Tuckaseegee Family Practice for a testosterone injection and for complaints of severe right *Page 6 
shoulder pain. Dr. Johnston noted that Plaintiff had lifted a large bucket of water with his right arm and has not had good range of motion in the arm since. Following an examination, Dr. Johnston suspected a rotator cuff tear or impingement syndrome. Dr. Johnston ordered a plain film x-ray and MRI of Plaintiff's right shoulder.
9. On February 22, 2010, Plaintiff underwent an MRI to his right shoulder with an intra-articular injection which showed a complete tear of the supraspinatus and infraspinatus tendons, as well as a partial tear of the subscapularis tendon.
10. On March 2, 2010, Plaintiff presented to Dr. Christofer Catterson with Western Carolina Orthopaedic Specialists with complaints of right shoulder pain since a January 19, 2010 work injury when he lifted a bucket of water weighing approximately 40 pounds and felt acute pain and pulling in his shoulder. Dr. Catterson's impression was right shoulder pain with subacromial impingement and complete rotator cuff tear. Due to the fact that Plaintiff's rotator cuff was completely torn, Dr. Catterson recommended surgical management as opposed to non-operative treatment.
11. On March 19, 2010, Dr. Johnston took Plaintiff out of work until further notice.
12. On March 22, 2010, Plaintiff filed with the Industrial Commission an Industrial Commission Form 18, Notice of Accident toemployer and Claim of Employee, Representative, or Dependent, dated March 16, 2010. Plaintiff indicated on the Form 18 that after lifting a mop bucket to empty it, his right arm and shoulder became very painful. Plaintiff noted that he assumed it was a pulled muscle.
13. On March 24, 2010, Plaintiff underwent a right shoulder arthroscopy by Dr. Catterson to repair his right rotator cuff tear, right shoulder anterior and superior labral tear, and right shoulder subacromial impingement. Plaintiff paid for the medical costs of his surgery and *Page 7 
has been out of work since the date of the surgery. As of the date of the hearing before the Deputy Commissioner in this case, Plaintiff had not reached maximum medical improvement or been released to return to work full duty. Following Plaintiff's surgery, Plaintiff participated in physical therapy and presented to Dr. Catterson for several post-surgical follow-up appointments.
14. Defendants denied Plaintiff's claim by filing an Industrial Commission Form 61, Denial of Workers' Compensation Claim, dated March 31, 2010, on the basis that Plaintiff's injury was not the result of an accident.
15. On July 15, 2010, Dr. Catterson issued a statement that Plaintiff could return to work effective August 9, 2010 with restrictions of no lifting greater than five pounds, no ladders or climbing, and no repetitive activities with the right arm. Dr. Catterson noted that the end date for Plaintiff's work restrictions was to be determined.
16. According to Plaintiff's job description, Plaintiff is required to have the ability to perform medium to heavy physical work. Some of Plaintiff's duties include physically challenging activities such as moving furniture and operating heavy cleaning equipment. Some of the equipment Plaintiff may be required to use includes large buffing machines, vacuum cleaners, carpet shampooers, pressure washers, and ladders.
17. The Full Commission finds that Plaintiff's pre-injury job as a housekeeper does not fall within Plaintiff's work restrictions as assigned by Dr. Catterson.
18. According to Defendant-Employer's Office of Human Resources, Plaintiff returned to work with Defendant-Employer on October 18, 2010. *Page 8 
19. The Full Commission finds that Plaintiff has not been capable of earning wages in any employment due to his compensable January 19, 2010 work injury from March 19, 2010, when Dr. Johnston took Plaintiff out of work, through October 17, 2010.
20. Plaintiff received short-term disability benefits fully funded by Defendant-employer from May 23, 2010 through October 17, 2010 totaling $5,016.88. While Plaintiff paid premiums for supplemental disability coverage with Liberty Mutual Insurance, Plaintiff did not file a supplemental disability claim with Liberty Mutual.
21. Plaintiff's average weekly wage as of the date of his injury was $521.89, yielding a compensation rate of $347.94 per week as stipulated by the parties pursuant to an Industrial Commission Form 22, Statement of Days Worked and Earnings of InjuredEmployee, detailing the time worked and wages earned during the 52-week period prior to Plaintiff's injury. According to the Form 22, Plaintiff earned a total of $27,138.25 during the 52-week period prior to Plaintiff's injury.
 ***********
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. In order for an injury to be compensable under the Workers' Compensation Act, it must be the result of an accident arising out of and in the course of employment. N.C. Gen. Stat. § 97-2(6). Plaintiff has the burden of proving that the injury complained of resulted from an injury by accident arising out of and in the course of the employment. Henry v. A.C. Lawrence Leather Co.,231 N.C. 477, 57 S.E.2d 760 (1950). *Page 9 
2. Plaintiff must show that the incident constituted an interruption of the routine of work and the introduction thereby of unusual conditions likely to result in unexpected consequences.Adams v. Burlington Indust., Inc.,61 N.C. App. 258, 300 S.E.2d 455 (1983). The resulting injury must involve more than the carrying on of the usual and customary duties in the usual manner to justify an award of compensation.Davis v. Raleigh Rental Center,58 N.C. App. 113, 292 S.E.2d 763 (1982).
3. The Full Commission concludes based upon the greater weight of the evidence that Plaintiff sustained an injury by accident arising out of and in the course of the employment with Defendant-Employer on January 19, 2010. N.C. Gen. Stat. § 97-2(6).
4. In order to qualify for compensation under the Workers' Compensation Act, a claimant must prove both the existence and extent of disability. Hilliard v. Apex Cabinet Co.,305 N.C. 593, 290 S.E.2d 682 (1982). Plaintiff has the burden of proving disability, defined as a loss of wage earning capacity.Russell v. Lowes Product Distrib.,108 N.C. App. 762, 425 S.E.2d 454 (1993). In order to meet the burden of proving disability, Plaintiff must prove that he was incapable of earning pre-injury wages in either the same or in any other employment and that the incapacity to earn pre-injury wages was caused by Plaintiff's injury. Hilliard v. Apex CabinetCo., 305 N.C. 593, 290 S.E.2d 682 (1982). An employee may meet the initial burden of production by producing one of the following: (1) medical evidence that he is physically or mentally, as a result of the work-related injury, incapable of work in any employment; (2) evidence that he is capable of some work, but that he has, after a reasonable effort, been unsuccessful in his efforts to obtain employment; (3) evidence that he is capable of some work, but that it would be futile because of preexisting conditions, such as age, inexperience, or lack of education, to seek employment; or (4) evidence that he has obtained other employment at wages *Page 10 
less than his pre-injury wages. Demery v. Perdue Farms, Inc.,143 N.C. App. 259, 545 S.E.2d 485 (2001); Russell,108 N.C. App. 762, 425 S.E.2d 454 (1993).
5. As a result of the January 19, 2010 compensable injury, Plaintiff was not able to earn wages in any employment from March 19, 2010 through October 17, 2010. Russell,108 N.C. App. 762, 425 S.E.2d 454 (1993). Therefore, Plaintiff is entitled to temporary total disability compensation at the rate of $347.94 per week beginning on March 19, 2010 through October 17, 2010. N.C. Gen. Stat. § 97-29.
6. Defendants are entitled to a credit for short-term disability benefits provided by Defendant-Employer from May 23, 2010 through October 17, 2010, during Plaintiff's period of temporary total disability. N.C. Gen. Stat. § 97-42.
7. Plaintiff is entitled to have Defendant pay for medical expenses incurred or to be incurred as a result of the compensable injury as may be required to provide relief, effect a cure or lessen the period of disability. N.C. Gen. Stat. § 97-25.
8. As the record does not contain evidence of an attorney's fee agreement, the Full Commission is not able to determine a reasonable attorney's fee at this time. N.C. Gen. Stat. § 97-90.
 ***********
Based upon the foregoing Stipulations, Findings of Fact, and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay temporary total disability compensation to Plaintiff at the rate of $347.94 per week for the period beginning on March 19, 2010 through October 17, 2010. *Page 11 
All accrued compensation shall be paid in a lump sum, subject to a reasonable award of attorney's fee.
2. Plaintiff's counsel shall file an attorney's fee agreement within seven (7) business days of the filing of this Opinion and Award for the Full Commission to review and issue a subsequent Order pertaining to a reasonable award of attorney's fee.
3. Defendants shall pay medical expenses incurred or to be incurred when medical bills have been submitted according to established Industrial Commission procedures.
4. Defendants are entitled to a credit for short-term disability plan benefits provided by Defendant-Employer during Plaintiff's period of temporary total disability from May 23, 2010 through October 17, 2010 against any temporary total disability benefits owed Plaintiff.
5. Defendants shall reimburse Plaintiff or any third-party payor for medical expenses related to Plaintiff's compensable injury that have already been paid by Plaintiff or a third-party payor.
6. As the record does not contain evidence of an attorney's fee agreement, the Full Commission did not determine a reasonable attorney's fee at this time.
7. Defendants shall pay the costs.
This the 14th day of July, 2011.
 S/________________
 CHRISTOPHER SCOTT
 COMMISSIONER
CONCURRING: *Page 12 
S/_________________ PAMELA T. YOUNG CHAIR
S/_________________ LINDA CHEATHAM COMMISSIONER *Page 1